UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL TAYLOR, | ) | Case No. 1:09CV1829 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MAGGIE BRADSHAW, Warden, | ) | |
| | ) | |
| Respondent. | ) | **Report and Recommendation** |
| | ) | **of Magistrate Judge** |
| | ) | |
| | ) | |

Petitioner Michael Taylor ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his Lorain County, Ohio Court of Common Pleas conviction for one count of Felonious Assault in violation of Ohio Revised Code ("O.R.C.") § 2903.11(A)(2), and two counts of Attempted Aggravated Arson, in violation of O.R.C.§§ 2923.02(A)(1), 2909.02(A)(2). ECF Dkt. #1; *see also* ECF Dkt. #19, Ex. 9.  On December 10, 2010, Respondent Maggie Bradshaw filed a Return of Writ.  ECF Dkt. #19.  Petitioner has not filed a traverse.

The case was referred to the undersigned for a Report and Recommendation.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

## I.       SYNOPSIS OF THE FACTS

The Ninth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6 th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

{¶ 2} According to Ms. Smith, she met Mr. Taylor in the fall of 2005. They began dating, but started having problems a few months later. On the evening of May 9, 2006, Ms. Smith was leaving the second floor apartment in which she and her sister lived when she saw Mr. Taylor on the sidewalk below. Mr. Taylor was visiting a friend at a different unit, but upon seeing her, told her that "you better get your sister out of here." Ms. Smith returned to her apartment at 2:00 a.m.

{¶ 3} Around 3:00 a.m., Mr. Taylor began repeatedly calling Ms. Smith from his friend's apartment. He told her that she should come out of her apartment at 3:04 a.m. to "see the blazing fire." Shortly thereafter, Ms. Smith saw Mr. Taylor strip off some of his clothes, run into her apartment, and lie down on her couch. When the telephone rang, he told her, "in a cartoon voice," that his mommy was calling him. Ms. Smith told Mr. Taylor to leave her apartment and he complied. A few minutes later, however, he returned. He handed Ms. Smith a card for a television news reporter and asked her to call the reporter for him.

{¶ 4} Mr. Taylor returned to Ms. Smith's apartment around 6:45 a.m. and knocked on her door. Ms. Smith opened her main door, but not her screen door, and watched Mr. Taylor walk downstairs. When Mr. Taylor returned upstairs, he had a one to two gallon can of gasoline and began pouring it on the porch in front of her unit and sloshing it inside her screen door. Ms. Smith went onto the porch and struck Mr. Taylor, trying to get the can from him, but Mr. Taylor then began pouring gasoline on her. When some splashed on him, Mr. Taylor told Ms. Smith that, "if we were going down, we were going down together."

{¶ 5} When Mr. Taylor finished pouring the gasoline, he went back downstairs. He took his shirt off, ripped part of it off, and stuffed that part in the gas can. He used a lighter to ignite the shirt part and attempted to throw the gas can up onto the porch. Before he could toss it, however, Eugene Waiters, a resident from another unit, knocked the can out of his hand.

{¶ 6} According to Mr. Waiters, he was walking around the apartment complex on the morning of May 10, 2006, when he saw Mr. Taylor get a gas can out of a mutual friend's car. He saw Mr. Taylor go upstairs in front of Ms. Smith's apartment and begin pouring the gasoline, stating that he was going to burn her up. After Mr. Taylor finished, Mr. Waiters saw him take his shirt off and use a lighter to ignite it. Mr. Taylor attempted to throw the shirt onto the porch, but Mr. Waiters hit his hand and blocked him from doing so. After Mr. Taylor failed to toss the shirt, he ran away.

{¶ 7} Ms. Smith testified that, as Mr. Taylor was attempting to ignite his shirt, she called 911. In the 911 call, Ms. Smith told the dispatcher that Mr. Taylor had poured gasoline on her, inside her apartment, and on the porch and that she believed he was about to set her on fire. While on the phone with the dispatcher, Ms. Smith yelled for Mr. Waiters to stop Mr. Taylor. In the background of the 911 call, a male voice can be heard yelling "[w]e all going down." Ms. Smith described to the dispatcher that Mr. Taylor had removed his shirt, tore it into strips, placed it into the opening of the gas can, lit it on fire, and attempted to throw the can onto the porch.

{¶ 8} The police responded within a few minutes, and the fire department responded shortly thereafter. Firefighters extinguished the burning gas can, which had burned a small patch of grass below Ms. Smith's apartment. They also flushed Ms. Smith's porch with water and used laundry detergent to break down any remaining gasoline.

-2-

{¶ 9} Mr. Taylor told a much different story. According to him, he had stopped by the apartment complex to get title to a van he had purchased from Mr. Waiters a couple of days earlier. When he tried to leave, however, the van would not start. He decided to call his mother from a payphone, but because the only payphones in the area were at a nearby hospital, he set the bags he had with him on the sidewalk. When he returned to his van, Ms. Smith had taken his bags up to her apartment. He claimed Ms. Smith was upset with him because he had gotten back together with his fiancée.

{¶ 10} Mr. Taylor testified that he went back to working on his van. Because the fuel filter was not working correctly, he needed to prime the engine with gasoline. As he was doing this, he saw Ms. Smith outside of her apartment. He therefore ran upstairs, still holding the gas can, to ask for his bags back. When he confronted Ms. Smith, however, she started attacking him, causing gasoline to splash out of the can onto both of them and the porch. Ms. Smith then yelled for Mr. Waiters to "get him."

{¶ 11} As Mr. Taylor went back downstairs, he removed his shirt to wipe off the gasoline that had splashed on him. He then saw Mr. Waiters start to pull a gun out on him. Mr. Taylor, therefore, lit the gas can on fire and swung it at Mr. Waiters. Mr. Taylor then threw the can and started running to get away from Mr. Waiters. Mr. Taylor testified that Mr. Waiters was upset with him because he thought he owed him an additional $100 for the van.

ECF Dkt. #19, Ex. 12; *State v. Taylor*, Case No. 06CA009000, 2008 WL 834437 at ¶¶2-11 (Ohio App. 9 Dist., Aug. 9, 2007), unreported.

## II.      PROCEDURAL HISTORY

### A.      State Trial Court

On July 12, 2006, the Lorain County, Ohio prosecuting attorney filed an indictment, charging Petitioner with: (Count One) Felonious Assault in violation of O.R.C. § 2903.11(A)(2); (Count Two) Attempted Aggravated Arson, in violation of O.R.C.§§ 2923.02, 2909.02(A)(1); (Count Three) Attempted Aggravated Arson, in violation of O.R.C.§§ 2923.02, 2909.02(A)(2); and (Count Four) Attempted Arson, in violation of O.R.C.§§ 2923.02, 2909.03(A)(1).   ECF Dkt. #19, Ex. 1.

At trial, the state moved to dismiss Count 4.  ECF Dkt. #19, Ex. 3.  On August 2, 2006, the jury found Petitioner guilty of Counts One, Two, and Three.  ECF Dkt. #19, Ex. 4.   That same day, the trial judge sentenced Petitioner to an aggregate term of nine years of incarceration.  ECF Dkt. #19, Ex. 5.  The trial judge imposed a term of six years for Count One and three years for Count Three, with the terms to run consecutively.  *Id*.  He merged Count Two for sentencing purposes.  *Id*.

### B.      Direct Appeal

On August 28, 2006, Petitioner filed a notice of appeal.  ECF Dkt. #19, Ex. 6.  He filed a

brief in support of his direct appeal, raising the following assignments of error:

    I.       APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION. (Tr. AT 1-337).

    II.      THE TRIAL COURT IMPROPERLY LIMITED APPELLANT'S CROSS EXAMINATION OF A WITNESS THEREBY DEPRIVING HIM OF A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION.  (Tr. at 107, 109).

    III.    THE TRIAL COURT'S INSTRUCTIONS TO THE JURY WERE INCOMPLETE AND THEREFORE DEPRIVED APPELLANT OF A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION.  (Tr. at 307, 308, 311).

    IV.    THE CUMULATIVE EFFECT OF ALL OF THESE ERRORS DEPRIVED APPELLANT OF A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION.  (Tr. at 1-337).

    V.      THE VERDICT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.  (Tr. at 1-337).

ECF Dkt. #19, Ex. 7.  On February 1, 2007, the state filed a response brief.  ECF Dkt. #19, Ex. 8.

Respondent notes the Supreme Court of Ohio's decision in *State v. Baker*, 893 N.E. 2d 163 (Ohio 2008).  On a certified conflict, the court determined that a sentencing entry "must include the sentence and the means of conviction, whether by plea, verdict, or finding by the court, to be a final appealable order under R.C. 2505.02."  *Id*. at 167.   On June 4, 2007, pursuant to Ohio Rule of Criminal Procedure 32(C), the trial court issued a new judgment entry that found Petitioner guilty of Counts One, Two, and Three, in the same document that imposed the sentence.  ECF Dkt. #19, Ex. 9.   That same day, Petitioner filed a motion requesting that the appellate court supplement the record with the trial court's most recent entry.  ECF Dkt. #19, Ex. 10.  He also asked that the appeal

proceed as a premature appeal pursuant to Ohio Rule of Appellate Procedure 4(C).[1]  *Id*.  The appellate court granted that motion.  ECF Dkt. #19, Ex. 11.  On March 31, 2008, the appellate court overruled Petitioner's assignments of error and affirmed his conviction.  ECF Dkt. #19, Ex. 12.

### C.     Supreme Court of Ohio

On April 25, 2008, Petitioner filed a memorandum in support of jurisdiction in the Supreme Court of Ohio, raising the following propositions of law:[2]

1.  Appellant was denied Effective [sic] assistance of counsel in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and article one, Section 10 of the Ohio Constitution.

2.  The trial court improperly limited Appellant's Cross-Examination of a witness thereby depriving him of a fair Trial in violation of his right under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article one, section 10 of the Ohio State constitution.

3.  The trial Court's institutions [sic] to the Jury were incomplete and therefore deprived Appellant of a fair trial in violation of his rights under the United States Constitution, and Article one Section 10 of the Ohio State Constitution.

4.  The cumulative effect of all of these errors deprived [sic] Appellant of a fair trial in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article one Section 10 of the Ohio State Constitution.

5.  The verdict is against the Manifest weight and sufficiency of the evidence and should be reversed because it violates the Fifth and Fourteenth Amendments to the United States Constitution and Article I Setion [sci] 10 of the Ohio State Constitution.

ECF Dkt. #19, Ex. 13. On April 25, 2008, Petitioner filed a motion for leave to exceed the page limit set forth in Ohio Supreme Court Rule of Practice 3.1(C).  ECF Dkt. #19, Ex. 14.  The state also filed a motion for leave to exceed the fifteen-page limit.  ECF Dkt. #19, Ex. 15.  On May 6, 2008, the

---

[1]     Ohio Rule of Appellate Procedure 4 provides in its pertinent part:

> **(C)      Premature notice of appeal**
> A notice of appeal filed after the announcement of a decision, order, or sentence but before entry of the judgment or order that begins the running of the appeal time period is treated as filed immediately after the entry.

Ohio R. App. P. 4(C).

[2]     Respondent has not furnished Petitioner's notice of appeal.  Counsel is advised to furnish certificates of appeal in future cases for the sake of completeness.

Supreme Court of Ohio denied both motions and struck pages 16-24 of Petitioner's memorandum in support of jurisdiction.  ECF Dkt. #19, Ex. 16.[3]

On May 22, 2008, the state filed a brief in response to Petitioner's memorandum in support of jurisdiction.  ECF Dkt. #19, Ex. 17.  On August 6, 2008, the Supreme Court of Ohio dismissed Petitioner's appeal as not involving a substantial constitutional question.  ECF Dkt. #19, Ex. 18.

### D.     Motion to Vacate and Correct Void Sentence

On August 14, 2009, Petitioner file a motion in the Lorain County Court of Common Pleas, seeking to vacate the sentence in his case because it purportedly did not conform to the mandatory requirements of the imposition of post-release control.  ECF Dkt. #19, Ex. 19.  On August 21, 2009, the court denied Petitioner's motion.  ECF Dkt. #19, Ex. 20.

On August 28, 2009, Petitioner filed a notice of appeal from the trial court's ruling.  ECF Dkt. #19, Ex. 21.  On October 26, 2009, he filed an appellate brief, raising the following assignment of error:

> The trial court erred and abused its discretion, thereby depriving defendant of due process of the law under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, when it denied – without hearing – a properly filed and substantively supported motion to vacate and correct a void sentence, with complete disregard for the Ohio Supreme Court directive, which has set forth an affirmative obligation to correct a void sentence under *State v. Simpkins*, 113 Ohio St.3d 1440, 863 N.E.2d 657, 2007-Ohio-1266.

ECF Dkt. #19, Ex. 22.  On November 12, 2009, the state filed a response brief.  ECF Dkt. #19, Ex. 23.  On November 23, 2009, Petitioner filed a reply brief.  ECF Dkt. #19, Ex. 24.  On March 8, 2010, the appellate court denied Petitioner's appeal and affirmed the trial court's ruling.  ECF Dkt. #19, Ex. 25.

On June 9, 2010, the appellate court issued an order noting that Petitioner had filed motions seeking an extension of time to file a motion for consideration of the March 8, 2010 ruling.  ECF Dkt. #19, Ex. 26.  The court noted that Petitioner had provided evidence showing that he did not

---

[3] The undersigned notes that Respondent has included a Supreme Court of Ohio judgment entry, dated May 6, 2008, and the entry may be found between Exhibits 15 and 17.  However, the exhibit is not labeled.  Due to its location and the fact that Respondent refers to the document as Exhibit 16, the undersigned will do so as well.

receive the March 8, 2010 decision, and the court accordingly granted Petitioner an extension of time to file a motion for reconsideration.  *Id.*

On August 4, 2010, the appellate court issued a judgment entry noting that Petitioner has moved for reconsideration on the basis that he attached the incorrect sentencing entry to the appellate brief, and, therefore, the appellate court did not properly consider the issues that Petitioner raised.  ECF Dkt. #19, Ex. 27.[4]  The appellate court denied Petitioner's motion.  *Id.*

### E.    28 U.S.C. § 2254 Petition

On August 3, 2009, Petitioner filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).  Petitioner has raised the following grounds for relief:

**Ground one:**  Denial of Effective Assistance of Counsel

**Supporting Facts**

1)    Trial counsel failed to object to improper and prejudicial statements made by the prosecutor during voir dire.  Where the prosecutor repeatedly discussed points of law in violation fo [sic] the pattern jury instruction.  Moreover, the prosecutions questions asked were often misleading and mis-stated important points of law.

2)    Trial Counsel was ineffective by failing to object to improper and prejudicial statements made by the prosecutor during closing arguments.  Where the prosecutor repeatedly mistated [sic] numerous legal concepts.  Furthermore, the prosecutor improperly expressed his personal opinion of the evidence.

3)    Trial counsel was ineffective by failing to file a plea of Not Guilty by Reason of Insanity.  Where testimony of the

---

[4]    Respondent has not filed the underlying motion with the answer or otherwise directed the Court to a copy of Petitioner's motion for reconsideration.  *See* Rules Governing § 2254 Cases, Rule 5(D)(The respondent must also file **with the answer** a copy of: (1) any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding; . . .) (emphasis added).  On an independent review of the docket, the undersigned notes that these related pleadings are attached as exhibits to ECF Dkt. #14.

defendant's bizarre behavior raised a question regarding the defendant's sanity and the prosecutor asked the court to sua sponte consider requireing [sic] the defense to file a plea of [not] guilty by reason of insanity.

4)      Trial consel [sic] was ineffective by failing to request a continuance to secure the attendance of witnesses. When at the conclusion of testimony, the court asked counsel whether he intended to present any more witnesses. Counsel's reply was that he believed any subponaed [sic]subpoenaed witnesses have not appeared and that he would tentatively rest; however, if they show up sometime during lanch [sic], he would ask for the right to call them.

5)      Trial counsel was ineffective by failing to object to inadmissable hearsay, as well as other inadmissable testimony and evidence.

6)      Trial counsel was ineffective by failing to request a jury instruction on self defense.

7)      Trial counsel was ineffective by failing to object to the trial court's jury instructions on flight, the definition of "knowingly," and the definition of "attempt".

**Ground two:** The trial court imporoperly [sic] limited defendant's cross examination of a witness thereby depriving him of a fair trial in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

**Supporting Facts:** The trial court sustained objections by the state to questions that concerned a witness' prior drug conviction for possesion [sic] of cocaine. The trial court sustained objection by the state about how long ago that' conviction was and as to whether the witness, still used cocaine. This was an abuse of the court's discretion in limiting the cross-examination on the topic of the witness' drug use. Counsel should have been allowed to explore whether the witness had been under the influence of a drug which may have affected his ability to recall events of the evening. The defendant's cross-examination of the witness was unfairly limited, thereby depriving him of his confrontation rights.

**Ground three:** The trial court's instructions to the jury were incomplete and therefore deprived defendant of a fair trial in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

**Supporting Facts:** The trial court's definitions of "flight", "knowingly" and "attempt" in the jury instructions were incomplete, and failed to designate and define elements of the offenses charged in the indictment, even in the absence of an objection.

**Ground four:** The cumulative effects of all of these errors deprived defendant of a fair trial in violation of his rights under the Fifth, Sixth and Fourteenth Amendment's to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

-8-

**Supporting Facts:** Significant mistakes were made at every stage of this case, from pretrial motions, to the instructions to the jury. Prior trial counsel failed to explore a plea of not guilty by reason if insanity. During voir dire, the jury heard incorrect and prejudicial statements from the prosecutor - statements that went unchecked and uncorrected. Counsel was precluded from conducting a full cross-examination of a witness in violation of defendants right to confront. Prejudicial hearsay was admitted without objection. Witnesses did not appear on defendant's behalf in violation of his right to have compulsory process to procure the attendance of witnesses. The jury was not instructed about possible defenses, and instructions about the offenses were incomplete and misleading. These mistakes made in this trial were of constitutional proportions, and raise serious questions regarding the fairness of the trial.

**Ground five:** The verdict is against the manifest weight and sufficiency of the evidence and should be reveresed [sic] because it violates the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

**Supporting Facts:** The defendant testified that he went to the apartment complex to buy a van and ended up getting attacked with a gun. He testified that he lit the gas can on fire to defend himself, and that he had no intention of burning the victim or her apartment. The testimony raised the issue of self-defense, and the finder of fact lost its way, creating a manifest miscarriage [sic] of justice.

**Ground six:** The sentence imposed was not authorized by law and did not comform [sic] to the statutory mandates, as such the sentence was void and a nullity and in violation of the Fifth, Sixth and Fourteenth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

**Supporting Facts:** At the sentencing hearing and in the court's judgment entry of conviction, the trial court incorrectly indictated [sic] to defendant that defendant would be on post-release control for a period of five years. However, the offenses defendant was found guilty of called for a mandatory three years of post-release control. The trial court provided inconsistent and inaccurate information regarding the duration of the post-release control. Since the period of post-release control is a part of the judicially imposed sentence, it follows that the trial court must correctly notify the offender of the maximum duration of post-release control that is part of his sentence. The trial court failed to notify the defendant he would be subject to a mandatory period of three years of postrelease control, the sentence is contrary to law, as such the sentence would be void.

**Ground seven:** The trial court has failed to impose a valid sentence within a reasonable time after conviction in violation of the Fifth, Sixth and Fourteenth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

**Supporting Facts:** The trial court has failed to impose a sentence which is authorized by law. The sentence imposed, August 2, 2006, would be void and a nullity. The trial court has disregarded what the law clearly commands, "that being the impostition [sic] of a nondiscretionary sanction required by a sentencing statute. This is fundemental [sic] to the understanding that no court has the authority to substitute a different sentence for that which is required by law.

-9-

ECF Dkt. #1.  On July 28, 2010, Respondent filed a motion to dismiss because the petition allegedly contained both exhausted and unexhausted claims.  ECF Dkt. #14.  On November 9, 2010, the undersigned issued an Interim Report and Recommendation, recommending that the Court deny Respondent's motion because the Ohio Court of Appeals had ruled on Petitioner's motion for reconsideration of the March 8, 2010 decision.  ECF Dkt. #16.  On November 10, 2010, the Court adopted the Interim Report and Recommendation.  ECF Dkt. #18.  On December 10, 2010, Respondent filed a return of writ.  ECF Dkt. #19.  Petitioner has not filed a traverse.

### III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  Respondent contends that the instant petition is time-barred and should be dismissed.  ECF Dkt. #5 at 20-25.[5]

In general, a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides:

(d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State

---

[5]     The heading of Respondent's argument reads "Love's Petition *Was* Timely Filed. . .";  however, it is clear from Respondent's argument that this is a typographical error and Respondent contends the petition is untimely.  *See* ECF Dkt. #5 at 20 (emphasis added).

-10-

action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts.  *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); see 28 U.S.C. § 2244(d)(2).  To determine if a state proceeding will toll the statute of limitations, the Sixth Circuit has held that:

A state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations.

*Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir. 1999).  Further, the "tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period has expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The one-year statute of limitations under Section 2244 is subject to equitable tolling when a petitioner's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the petitioner's control.  *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). The Sixth Circuit has stated that "federal courts sparingly bestow equitable tolling." *Graham-Humphreys*, 209 F.3d at 560-61; *Jurado*, 337 F.3d at 642.  When determining whether equitable tolling is appropriate, the court must consider: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3)

-11-

diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap*, 250 F.3d at 1008; *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002).  These factors are not comprehensive and not all of the factors are relevant in all cases. *Cook*, 295 F.3d at 521.  Whether equitable tolling is appropriate is a case-by-case analysis. *Id.* "Absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Allen v. Yukins*, 366 F.3d 396, 401-02, 404 (6th Cir. 2004).  The petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling. *Vroman*, 346 F.3d at 605.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see*

also *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for

-13-

a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

> (1)  whether the petitioner failed to comply with an applicable state procedural rule;
>
> (2)  whether the state courts actually enforced the state procedural sanction;
>
> (3)  whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and
>
> (4)  if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); Richey, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000)(where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice

test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), cert. denied, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

**IV**.    **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

      (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

           (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

           (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

     The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

      A.     Decisions of lower federal courts may not be considered.

      B.     Only the holdings of the Supreme Court, rather than its dicta, may be considered.

      C.     The state court decision may be overturned only if:

           1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court

<blockquote>

precedent must exist at the time of petitioner's direct appeal] or;

2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

</blockquote>

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509

U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.     ANALYSIS

### A.     Procedural Default Analysis

#### i.     Ground Two, Three, Four, and Five

Respondent contends that Grounds Two, Three, Four, and Five are procedurally defaulted because Petitioner failed to comply with Ohio Supreme Court Rule of Practice III(1)(C) when he filed a "motion in support of jurisdiction"[6] that exceeded fifteen pages.  ECF Dkt. #19 at 12. Respondent contends that, by filing a nonconforming document, Petition meets the first prong of the *Maupin* test.  *Id.*[7]  The undersigned agrees, with limitation.  Respondent makes no effort to demonstrate how Petitioner's noncompliance specifically affected Grounds Two, Three, Four, or Five.  Thus, Respondent leaves the Court to the task of determining the import of Petitioner's noncompliance with the procedural rule.

Notably, "The fair presentation requirement is not satisfied when a claim is presented in state

---

[6]    Respondent contends Petitioner filed an nonconforming motion; the document at issue is a memorandum in support of jurisdiction.  ECF Dkt. #19 at 12; Ex. 13.

[7]    Interestingly, the undersigned notes that in this very case, Respondent herself has failed to comply with a procedural rule pertaining to page limitations.  Local Rule 7.1(f) provides, in its pertinent part: "Every memorandum related to a dispositive motion must be accompanied by a certification specifying the track, if any, to which the case has been assigned and a statement certifying that the memorandum adheres to the page limitations set forth in this section."  Respondent filed two dispositive motions, neither of which contained the required certifications.  ECF Dkt. #11, 14. While Respondent's noncompliance with this Court's local rules has no bearing on whether Petitioner's claims are procedurally defaulted, counsel is admonished to comply with the rules in the future.

-18-

court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley,* 87 F.3d 1315 (Table), 1996 WL 266421 at *2. (6th Cir. May 17, 1996) citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848-49 (1999)(acknowledging the close relationship between the exhaustion requirement and procedural default; ultimately holding that Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.). Satisfied with the fact that Petitioner failed to present the entirety of his arguments in a fifteen- page brief, Respondent does not engage in the "fair presentation" analysis that is essential to a determination of procedural default in this case. Specifically, Respondent offers no analysis as to what argument was contained in the non-conforming pages, and why the Petitioner's failure to comply with the procedural rule should result in a finding that he failed to fairly present the issue to the state court. The undersigned finds it unnecessary to address these issue because the third prong of the *Maupin* test is not satisfied, as discussed in further detail below.

Respondent next contends that the Supreme Court of Ohio enforced its procedural rule by striking pages sixteen through twenty-four of the document, thereby satisfying the second prong of the *Maupin* test. ECF Dkt. #19 at 12. Again, the undersigned agrees, with the same limitation noted above. *See* ECF Dkt. #19, Ex. 16.

With regard to the third prong of *Maupin*, Respondent contends that "[i]t is well-established and regularly followed practice for the Ohio Supreme Court to decline the review of claims filed in violation of the court's procedural rules." ECF Dkt. #19 at 12 citing *State ex rel. Fuller v. Mengel*, 800 N.E.2d 25, 26-28 (Ohio 2003) (per curiam). The authority upon which Respondent relies is inapposite. The case does not demonstrate that the Supreme Court of Ohio regularly enforced the rule at issue in this case. *Fuller* dealt with only one notice of appeal, and, thus, falls short of establishing the premise that the Rule of Practice III(1)(C) was firmly established and regularly followed at the time it was applied in Petitioner's case. *see Ford*, 498 U.S. at 423-24. Further, the determinative issue in *Fuller* concerned a defendant's failure to perfect an appeal within the time period prescribed by Rule II(2)(A)(1). *Fuller*, 800 N.E.2 at 26. The *Fuller* court did mention that

-19-

the defendant failed to file a memorandum conforming to page limitation set forth in Rule III(1)(C), but the *Fuller* court ultimately enforced the time restriction, not the page restriction. *Id*. at 27-28. Accordingly, Respondent has failed to demonstrate that the Supreme Court of Ohio's practice of invoking Rule III(1)(C) in order to strike portions of a memorandum in support of jurisdiction constitutes an adequate and independent basis to foreclose federal habeas review.

For the foregoing reasons, the undersigned finds it unnecessary to discuss cause and prejudice, and the undersigned recommends that the Court proceed to analyze the merits of Grounds Two, Three, and Four.

The undersigned notes that Respondent has offered no analysis regarding the merits of these claims. Since Respondent has chosen not to address the merits of Grounds Two, Three, and Four, the undersigned will do so without Respondent being heard on the issue. That analysis is set forth in subsection B, below.

### ii. Grounds Six and Seven

Respondent contends that Grounds Six and Seven are procedurally defaulted because Petitioner presented those claims only in a motion to vacate his sentence (ECF Dkt. #19, Ex. 19) and he never perfected a timely appeal to the Supreme Court of Ohio regarding the denial of that motion. ECF Dkt. #19 at 13.

In a conclusory fashion, Respondent states "Under Ohio law, Taylor's motion is construed as a petition for post-conviction relief." ECF Dkt. #19 at 13 citing *State v. Reynolds*, 679 N.E.2d 1131 (Ohio 1997). Again, the authority Respondent cites is inapposite. Of note, Respondent provides no pinpoint citation or explanation of the case, leaving the Court to search the entire case for support of Respondent's proposition of law. In *Reynolds*, the Supreme Court of Ohio held "where a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence *on the basis that his or her constitutional rights have been violated*, such a motion is a petition for postconviction relief as defined in R.C. 2953.21." *Reynolds*, 679 N.E.2d at 160 (emphasis added). Further the court applied the rule of law as follows:

-20-

> Reynolds's Motion to Correct or Vacate Sentence, despite its caption, meets the definition of a motion for postconviction relief set forth in R.C. 2953.21(A)(1), because it is a motion that was (1) filed subsequent to Reynolds's direct appeal, (2) **claimed a denial of constitutional rights**, (3) sought to render the judgment void, and (4) asked for vacation of the judgment and sentence.

*Reynolds*, 679 N.E.2d at 160 (emphasis added).  Unlike the motion in *Reynolds*, Petitioner's motion to vacate did not assert the denial of a constitutional right.  Instead, the motion argued that the trial court violated O.R.C. § 2967.28 and never mentioned a state or federal constitutional right.[8]  *See* ECF Dkt. #19, Ex. 19; *see also* ECF Dkt. #14, Ex. 4.  Therefore, the holding in *Reynolds* does not apply.

Nevertheless, Petitioner remains without an available appeal in the Supreme Court of Ohio. The Ohio Court of Appeals affirmed the trial court's decision on March 8, 2010 and denied Petitioner's request for reconsideration on August 4, 2010.  ECF Dkt. #19, Ex. 25, 27.  Petitioner had forty-five days in which to file an appeal in the Supreme Court of Ohio.  Ohio S.Ct. Prac. R. 2.2(A)(1).  He failed to do so.  It is therefore clear that he failed to comply with a state court procedural rule, and the first prong of *Maupin* is satisfied.

The second prong of *Maupin* is also satisfied because the Sixth Circuit has  held that, where the state court could not invoke its procedural rules because the claims were never brought before it, those claims are procedurally barred.  *Buell*, 274 F.3d at 349.  Further, the third prong of *Maupin* is satisfied because "a petitioner's failure to raise his claims in Ohio courts is an adequate and independent state law ground for upholding the petitioner's conviction and sentence."  *Id*.  "

Notably, Petitioner stated his claims in the state courts as purported violations of state statutory law.  He now states them as violations of the Fifth, Sixth, and Fourteenth Amendments of the Federal Constitution.  Thus, it appears that he *never* presented the Federal Constitutional issues to the state courts at all.  "When the petitioner has failed to present the grounds to the state courts and

---

[8]     It is important to note that Petitioner raised Federal Constitutional claims for the first time in the instant petition.  In the motion to vacate, Petitioner merely challenged the trial court's jurisdiction, which is inadequate to preserve a Federal Constitutional issue for this Court's review.  *Cf. Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976) (per curiam) ("A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary.")

has exhausted his claims because no state remedy remains available, his grounds are procedurally defaulted." *Landrum v. Mitchell*, ___ F.3d ___, 2010 4352213 (Nov. 4, 2010), *slip op.* at *10. In *Hemphill v. Hudson*, this Court held that a complete failure to file a direct appeal in the Supreme Court of Ohio resulted in procedural default. 1:08CV9, 2009 WL 1107890 (N.D. Ohio Apr. 23, 2009) (Gaughan, J.) ( considering appeal related to a claim of ineffective assistance of appellate counsel). Given the foregoing, the undersigned recommends that the Court find the first, second, and third prongs of the *Maupin* test to be satisfied.

Petitioner makes no showing of cause for his default or prejudice resulting therefrom. Accordingly, the undersigned recommends that the Court find Grounds Six and Seven to be procedurally defaulted, albeit for reasons different than those advanced in the return of writ.

### B.    Merits Analysis

### i.    Ground One - Ineffective Assistance of Trial Counsel

In Ground One, Petitioner asserts seven claims of ineffective assistance of trial counsel. In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984). To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

-22-

Typically, a habeas court reviews the state court's ruling for an unreasonable application of federal law.  In a case such as this, Petitioner, must show not only that trial counsel's strategy was unreasonable, but that the state appellate court's finding that his strategy was not unreasonable was itself unreasonable.  28 U.S.C. § 2254(d); *see Mooney v. Trombley,* 2007 WL 2331881 at *21 (E.D.Mich., Aug. 13, 2007), unreported.

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990).  "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

In this case, Petitioner raises various claims, but most of them share a common trait of being overly generic.  In subclaims 1, 2, 3, and 5, Petitioner objects to various purported errors by counsel, but he fails to direct the court to specific errors of record.  A "generalized claim of ineffective assistance of counsel, without any particularized acts or omissions, is insufficient for a court to determine ineffective assistance of counsel." *Hurst v. Jabe*, 961 F.2d 1577 (table), 1992 WL 92791, at *2 (6th Cir.1992).

In Subclaim 1, Petitioner contends that trial counsel failed to object to the improper and prejudicial statements made by the prosecutor during voir dire.  ECF Dkt. #1 at 3.  Petitioner does not identify what those improper statements were, other than claiming that the prosecutor "repeatedly discussed points of law in violation fo [sic] the pattern jury instructions." *Id*.  Petitioner also claims that the prosecution's questions were often misleading and misstated important points of law. *Id.* As it is stated, this subclaim requires a review of the entire record, provides not direction as to a perceived error, and fails to identify a particularized act or omission on the part of trial counsel that amounts to ineffective representation.  Therefore, the undersigned recommends that the Court find

-23-

Subclaim 1 to lack merit.

In Subclaim 2, Petitioner contends that trial counsel was ineffective for failing to object to improper and prejudicial statements made by the prosecutor during closing arguments.  ECF Dkt. #1 at 3.  Again, Petitioner contends that the prosecutor misstated the law, and he also contends that the prosecutor expressed his personal opinion of the evidence.  *Id.*  As with Subclaim 1, Petition has not identified any particularized act or omission on the part of trial counsel to support his claim. Therefore, the undersigned recommends that the Court find Subclaim 2 to lack merit.

In Subclaim 3, Petitioner contends that trial counsel was ineffective because he failed to file a plea of Not Guilty by Reason of Insanity where testimony of Petitioner's "bizarre behavior" raised a question regarding his sanity and the prosecutor asked the court to sua sponte consider requiring the defense to file a plea of not guilty by reason of insanity.  ECF Dkt. #1 at 3-4.  Petitioner does not identify any of this alleged "bizarre behavior."  He therefore has failed to identify a particularized act or omission on the part of trial counsel that amounts to ineffective representation. Therefore, the undersigned recommends that the Court find Subclaim 3 to lack merit.

In Subclaim 5, Petitioner claims that trial counsel failed to object to inadmissible hearsay and other inadmissible evidence.  ECF Dkt. #1 at 4.  Petitioner has failed to identify any of the purportedly objectionable evidence.  His claim again requires a review of the entire record and fails to identify a particularized act or omission on the part of trial counsel that amounts to ineffective representation. Therefore, the undersigned recommends that the Court find Subclaim 3 to lack merit.

Before proceeding, it is worth noting that the state appellate court has addressed claims similar to those stated in Subclaims 1, 2, 3, and 5, and the court found them to lack merit.  ECF Dkt. #19, Ex. 12 at ¶¶ 15-18, 19-26, 32-37, 38-42.  Particularly due to his failure to specify errors of counsel, Petitioner has failed to demonstrate that the appellate court's ruling constituted an unreasonable application of clearly established federal law.  Accordingly, the undersigned recommends that the Court dismiss Subclaims 1, 2, 3, and 5 in their entirety.

The undersigned recommends that the Court find Subclaims 4, 6, and 7 to be sufficiently particularized to merit further review.  In Subclaim 4, Petitioner challenges counsel's failure to request a continuance to secure the attendance of witnesses at the close of the defense case in chief. In Subclaim 6, Petitioner claims that counsel was ineffective by failing to request a jury instruction for self defense. In Subclaim 7, Petitioner claims that counsel was ineffective for failing to object to the trial court's jury instructions on flight, the definition of "knowingly" and the definition of "attempt."   In all three of these subclaims, Petitioner has directed the court to particular acts or omissions that are reviewable.

Turning first to Subclaim 4, the appellate court noted:

> Mr. Taylor has next argued that his lawyer was ineffective because he failed to request a continuance after several of his potential witnesses failed to appear. Mr. Taylor, however, has failed to identify who those witnesses were or indicate how their testimony would have been material to his defense. Accordingly, he has failed to demonstrate that he was prejudiced by his lawyer's decision not to move for a continuance. *See State v. Peck*, 2d Dist. No. 21354, 2006-Ohio-5796, at ¶ 65 (denying ineffective assistance claim on direct appeal because record failed to indicate how missing witness's testimony would have been helpful).

ECF Dkt. #19, Ex. 12 at ¶31.  The appellate court was correct in observing that Petitioner had failed to identify the witnesses at issue and thereby failed to demonstrate prejudice.  Therefore, the undersigned recommends that the Court find the foregoing analysis to constitute a reasonable application of federal law and dismiss Subclaim 4 with prejudice accordingly.

In the claim underlying Subclaim 6, Petitioner contended that defense counsel was ineffective for failing to seek an instruction on self defense.  As a preliminary matter, the undersigned notes that Respondent contends that alleged errors associated with jury instructions are generally matters of state law.  ECF Dkt. #34.  The undersigned reiterates that the state law issue is merely a basis for Petitioner's constitutional claim of denial of the effective assistance of counsel.  It is well-established that counsel's competence must extend to matters of state criminal law for the Sixth Amendment protection to have significance.  The United States Supreme Court has acknowledged that the Sixth Amendment requires competence in matters of state law:

-25-

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963) (emphasis added). Therefore, this Subclaim 6 is cognizable.

Petitioner's underlying state law claim was based upon his own testimony that he lit the gas can on fire to defend himself against Mr. Waiters.  ECF Dkt. #19, Ex. 6 at 15.  This is the claim that Petitioner has preserved for review before this Court.  The appellate court addressed that claim and held as follows:

> {¶ 43} Mr. Taylor has next argued that his lawyer was ineffective because he failed to request a jury instruction on self-defense. Mr. Taylor has asserted that his testimony established that the reason he lit the gas can on fire was to defend himself from Mr. Waiters.

> {¶ 44} Section 2901.05(A) of the Ohio Revised Code provides that "the burden of proof ... for an affirmative defense, is upon the accused." The standard for whether a criminal defendant has successfully raised an affirmative defense under Section 2901.05 is "whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." *State v. Melchior*, 56 Ohio St.2d 15, paragraph one of the syllabus (1978). Self-defense requires a defendant to prove:

>> (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

> *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

> {¶ 45} Mr. Taylor was indicted for feloniously assaulting Ms. Smith, the attempted aggravated arson of Ms. Smith, and the attempted aggravated arson of Ms. Smith's property. Accordingly, because none of the charges involved Mr. Taylor's conduct

-26-

toward Mr. Waiters, Mr. Taylor's lawyer was not ineffective for failing to propose a self-defense instruction.

ECF Dkt. #19, Ex. 12 at ¶¶43-45.  Petitioner has done nothing to demonstrate that the appellate court's finding was objectively unreasonable.  In fact, Petitioner testified that he was running down the stairs from Ms. Smith's apartment when he encountered Mr. Waiters, and he saw Mr. Waiters "start[ ] to pull a pistol" so he light the gas can that he was carrying and swung it at Mr. Waiters.  Tr. at 246.  Petitioner testified that he took off running.  *Id.*  He testified that:

> I took off running for my life.  I just had major surgery.  I had a kidney removed last year.  I don't need to be in a physical confrontation, so I took off.

*Id.* at 247.  Based on this testimony, Petitioner failed to demonstrate that he had a bona fide belief that his only means of escape was the use of force.  Petitioner's testimony would not raise a question in the minds of reasonable men concerning the existence of the necessity to light the gasoline can because he ultimately claimed that he found it necessary to flee.  He offered no explanation as to how lighting the gasoline can assisted with his flight.  Accordingly, the undersigned sees no basis for determining that trial counsel was ineffective.

Additionally, trial counsel argued that the weight of the evidence did not support the prosecution's case.  Tr. at 288-93.  Given the development of the facts in this case, counsel may have made a valid strategic decision to pursue only a defense aimed at highlighting reasonable doubt, rather than attempting to prove affirmative elements required by self-defense.  *Cf. Hines v. Kelly*, 2009 WL 2705884 at *25 (N.D.Ohio Aug. 26, 2009), unreported (noting the state court's holding, the district court held as follows: " '[D]efense counsel reasonably could have concluded that the best strategy was to focus on only one theory: self-defense.' [*State v. Hines*, 2008 WL 3870669 at *4 (Ohio App. Aug. 21, 2008)].  As the decision was a reasonable strategic choice made by Hines' counsel, it cannot be said to fall below a standard of reasonably effective assistance.").  In *Plummer v. Jackson*, a United States Magistrate Judge noted a state appellate court opinion that granted an attorney latitude in strategic choices due to the fluidity of the development evidence:

> "With defendant's belated decision to forgo testifying, counsel's original plan to present a self-defense theory was obviously weakened.  Under the circumstances,

-27-

> counsel made the strategic decision to attempt to argue that the prosecution had not proved its case." [*People v. Plummer*, 229 Mich.App. 293, 581 N.W.2d 753, 761 (1998)].  The Court should conclude that this determination was reasonable.

2008 WL 5501172 at *11 (E.D.Mich. Dec. 23, 2008), unreported.  The corresponding district court adopted this report and recommendation in *Plummer v. Jackson*, 2009 WL 1086791 (E.D.Mich. Apr. 22, 2009), unreported.  In this case, Petitioner testified that he did not need to be in a physical confrontation, so he "took off."  Tr. at 247.  Since Ohio law requires a showing that the defendant had a bona fide belief that his only means of escape was through the means of force, counsel's decision not to pursue a self-defense instruction constitutes a viable strategy.  *Melchior*, 381 N.E.2d at 199 (as to Ohio law regarding self-defense).

Given the record of this case, the applicable law, and Petitioner's failure to demonstrate an unreasonable application of federal law on the part of the state courts, the undersigned recommends that the Court dismiss Subclaim 6 in its entirety with prejudice.

Lastly, in Subclaim 7, Petitioner contends that trial counsel was ineffective for failing to object to the trial court's jury instructions on flight, the definition of "knowingly," and the definition of "attempt."  ECF Dkt. #1 at 4.  Petitioner offers no explanation as to why these instructions were allegedly objectionable.  Respondent only addresses Petitioner's claim related to the trial court's flight instruction, offering no analysis related to the other instructions.  ECF Dkt. #19 at 35-37.

As with Petitioner's other Subclaims, he makes no showing that the state appellate court's application of law was objectively unreasonable.  With respect to flight, the appellate court held as follows:

### FLIGHT INSTRUCTION

{¶ 46} Mr. Taylor has next argued that his lawyer was ineffective because he failed to object to the trial court's incomplete flight instruction. The trial court instructed the jury:

> In this case, there is evidence tending to indicate the Defendant fled from the vicinity of the alleged crime.

In this regard, you are instructed that flight in and of itself does not raise a presumption of guilt, but it may tend to show consciousness of guilt or a guilty connection with the crime.

If, therefore, you find the Defendant did flee from the scene of the alleged crime, you may consider the circumstances of this case when determining the guilt or innocence of the Defendant.

Upon you alone rests the decision to determine what weight, if any, to place upon the evidence you find, if any, bearing upon this issue.

Mr. Taylor has asserted that the trial court's instruction omitted crucial language from the Ohio Jury Instructions that would have instructed the jury that "if you find that the facts do not support that the defendant fled the scene, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose."

{¶ 47} This Court has repeatedly concluded that flight instructions that were materially identical to the ones given in this case were proper. *See State v. Gibson*, 9th Dist. No. 23881, 2008-Ohio-410, at ¶ 19; *State v. Villa*, 9th Dist. No. 05CA008773, 2006-Ohio-4529, at ¶ 30; *State v. Brady*, 9th Dist. No. 22034, 2005-Ohio-593, at ¶ 9; *State v. Davilla*, 9th Dist. No. 03CA008413, 2004-Ohio-4448, at ¶ 16. The instructions in none of those cases included the language Mr. Taylor asserts was required. Mr. Taylor, therefore, has not shown that he suffered any prejudice from his attorney's failure to object to the trial court's flight instruction.

ECF Dkt. #19, Ex. 12 at ¶¶ 46-52.  Petitioner has not demonstrated that this ruling constituted an unreasonable application of federal law.  Based on the precedent cited by the appellate court, the undersigned sees no basis for finding trial counsel's performance to be deficient or prejudicial.

With respect to the instruction on the element of "knowingly" the appellate court held:

### "KNOWINGLY" INSTRUCTION

{¶ 48} Mr. Taylor has next argued that his lawyer was ineffective because he failed to object to the trial court's instruction on the term "knowingly." The trial court defined knowingly as:

A person acts knowingly, regardless of their purpose, when he is aware that [his] conduct will probably cause a certain result or that the conduct will be of a certain nature.

A person has knowledge of circumstances when he is aware that such circumstances probably exist.

Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence.

Mr. Taylor has asserted that the instruction should have included an additional sentence:

You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that (his conduct in lighting the gas can on fire would cause serious physical harm to Lisa Smith or her property).

Mr. Taylor believes this statement contained a critical part of the mens rea instruction and corresponded with a police officer's testimony that if you throw a cigarette into a puddle of gasoline, it will not ignite.

{¶ 49} "The instructions found in Ohio Jury Instructions are not mandatory." *State v. Martens*, 90 Ohio App.3d 338, 343 (1993) (concluding that a trial court is not required to give additional instructions because they are contained in the Ohio Jury Instructions). "A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." *Marshall v. Gibson*, 19 Ohio St.3d 10, 12 (1985). "[I]nstructions must be read as a whole ." *State v. Sanders*, 92 Ohio St.3d 245, 264 (2001).

{¶ 50} While the omitted sentence is part of the pattern jury instructions, it is not part of the Ohio Revised Code's definition of knowingly:

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

R.C. 2901.22(B). The trial court's instruction on knowingly followed the statutory language exactly and was an accurate statement of law. The jury, therefore, was properly instructed. Accordingly, Mr. Taylor's lawyer was not required to object to the instruction.

ECF Dkt. #19, Ex. 12 at ¶¶ 48-50.  Given the appellate court's observation that the trial court's instruction followed the statutory language "exactly," the undersigned again sees no basis for finding trial counsel's performance to be deficient or prejudicial.

With regard to the attempt instruction, the appellate court held as follows:

ATTEMPT INSTRUCTION

{¶ 51} Mr. Taylor has next argued that his lawyer was ineffective because he failed

-30-

to object to the trial court's attempt instruction. He has asserted that the trial court's instruction for attempted aggravated arson was deficient because it left out the definition of attempt, as set forth in the Ohio Revised Code.

{¶ 52} Although the trial court did not use the language of the statute or the Ohio Jury Instructions during its instruction regarding attempted aggravated arson, it had already provided a definition for attempt when it instructed the jury on felonious assault. Because this prior definition of attempt, coupled with the definition of the principal offense of aggravated arson, adequately stated the law for attempted aggravated arson, there was no need for Mr. Taylor's lawyer to object when the trial court failed to repeat the attempt part of the instruction.

ECF Dkt. #19, Ex. 12 at ¶¶ 46-52.  Since the jury was otherwise instructed on attempt, the undersigned sees no basis for finding trial counsel's performance to be deficient or prejudicial.

For the foregoing reasons, the undersigned recommends that the Court dismiss Subclaim 7 in its entirety with prejudice.

In sum, the undersigned recommends that the Court dismiss Ground One in its entirety with prejudice.

### ii.    Ground Two - Confrontation Clause

Petitioner contends that the trial court improperly sustained objections to questions concerning a witness' prior drug conviction for possession of cocaine. ECF Dkt. #1 at 4. Petitioner contends that counsel should have been allowed to explore whether the witness had been under the influence of a drug which may have affected his ability to recall events of the evening. *Id.* at 5. Petitioner's concludes that his cross-examination was unfairly limited and his confrontation rights were denied. *Id.*

The Sixth Circuit has held that federal habeas review of a state trial court ruling based upon state evidentiary law is "extremely limited." *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). "[E]rrors in application of state law, especially with regard to the admissibility of evidence, are *usually* not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983) (emphasis added).  In another case, the Sixth Circuit's held that the construction of the claim determines its cognizability:

> Bey's second claim is that, even though the Ohio Supreme Court upheld the admission of the 'other acts' evidence as a matter of state evidentiary law, that particular evidence was so prejudicial that its admission nonetheless rendered his entire trial fundamentally unfair, **which denied him due process under the Fifth and Fourteenth Amendments. This is Bey's new construction of his proposed habeas issue and by framing it as a constitutional violation he has at least asserted a cognizable habeas claim** . . .

*Bey v. Bagley*, 500 F.3d 514, 519-520 (6th Cir. 2007) (emphasis added).  Although Petitioner asserts that the trial court committed an error pertaining to a state evidentiary issue, he ultimately contends that he was denied the constitutional right to confront an adverse witness.  Since Petitioner asserts a violation of the right to confront an adverse witness in violation of the Sixth Amendment to the United States Constitution, the undersigned recommends that the Court find his claim to be cognizable.

In *Davis v. Alaska*, the United States Supreme Court analyzed the relationship between cross-examination and the Confrontation Clause:

> Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination.'  *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). Professor Wigmore stated:

>> 'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' (Emphasis in original.) 5 J. Wigmore, Evidence s 1395, p. 123 (3d ed. 1940).

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.

*Davis*, 415 U.S. at 315-16 (1974).

The Sixth Circuit has outlined some of the boundaries of cross-examination in light of *Davis*:

> "[i]t does not follow ... that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Id.* at 679, 106 S.Ct. 1431. For example, the judge may impose "reasonable limits" to avoid "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [*Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674

(1986).] The Confrontation Clause " 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Id*. (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam)). Applying these principles, *Van Arsdall* acknowledged a Confrontation Clause violation because the trial court had "prohibited all inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge." *Id*. The Court then restated its rationale: "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias...." *Id*. at 680, 106 S.Ct. 1431 (citing *Davis*, 415 U.S. at 318, 94 S.Ct. 1105).

These cases demonstrate that the Confrontation Clause affords the right to impeach a witness with his criminal record, subject to the trial court's discretion to impose reasonable limitations to prevent harassment and annoyance of the witness. *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431. Impeachment with prior crimes is precisely the "otherwise appropriate" cross-examination permitted under *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. 1431. It is a prototypical form of cross-examination, even if it goes only to the witness's credibility. *See Davis*, 415 U.S. at 316, 94 S.Ct. 1105; *see also*, e.g., *Ohler v. United States*, 529 U.S. 753, 757, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000) ("[O]nce the defendant testifies, she is subject to cross-examination, including impeachment by prior convictions...."); *Grunewald v. United States*, 353 U.S. 391, 420, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) ("[W]hen a criminal defendant takes the stand, he ... becomes subject to cross-examination impeaching his credibility just like any other witness....").

*Vasquez v. Jones*, 496 F.3d 564, 570 (6th Cir. 2007).  In sum, "[d]efense counsel must be afforded an ample opportunity to test the credibility and veracity of adverse witnesses." *U.S. v. Faymore*, 736 F.2d 328, 334 (6th Cir. 1984).  Nevertheless, the Confrontation Clause "does not guarantee the defense the right to conduct a completely unfettered examination." *DeMastry v. Warden,* No. 2:05-cv-267, 2007 WL 869695 at *31 (S.D. Ohio Mar. 20, 2007); *Van Arsdall*, 475 U.S. 673; *Fensterer*, 474 U.S. at 20.  The Sixth Circuit has held that federal trial courts must be afforded wide discretion to restrict the scope of cross-examination.  *Faymore*, 736 F.2d at 334.  Examples of appropriate areas in which a trial court may restrict questioning include repetitive and unintelligible questions.  *Id*.

In this case, Petitioner's right to cross examine the witness was not unduly restricted. Petitioner contends that the trial court erred in restricting cross-examination regarding "a witness' prior conviction for possession of cocaine.  ECF Dkt. #1 at 4.  The undersigned concludes that the "witness" must be Mr. Waiters because that is the claim that Petitioner preserved on direct appeal.

-33-

ECF Dkt. #19, Ex. 7 at 21.  In any event, Petitioner's claim lacks factual support.  The pertinent portion of the trial transcript demonstrates that counsel did inquire about Mr. Waiters' prior conviction and the prosecution's objection was overruled:

> **Q [by defense counsel]:**     All right. Did I hear you correctly that you have a case pending?
>
> **A [Mr. Waiters]:**      Yes, I do.
>
> **Q**      And what is that for?
>
> **A**      I'm just an parole.
>
> **Q**      Say that again?
>
> **A**      I'm an parole .
>
> **Q**      What are you an parole far?
>
> **A**      For possession and bad checks.
>
> **Q**      Possession of what?
>
> > **MR. KINLIN [prosecuting attorney]:** Objection.
> >
> > **THE COURT:** Overruled.
>
> **Q**      Please answer.
>
> **A**      Cocaine.
>
> **Q**      And you have already been convicted of that? It is no longer pending? You are an parole?
>
> **A**      Yeah, I'm an parole.
>
> **Q**      Is that here in Lorain County?

**A**      Yeah.

Tr. at 99.  Given the foregoing testimony, the undersigned recommends that the Court find Petitioner's claim to lack merit insofar as he contends that he was not afforded an opportunity to inquire into Mr. Waiters' previous conviction.

Petitioner also contends that he was denied the ability to question Mr. Waiters about whether he still used cocaine and whether he was under the influence of a drug which may have affected his ability to recall events of the evening.  ECF Dkt. #1 at 4-5.  As the appellate court noted in this case, trial counsel failed to ask specifically whether Mr. Waiters had used any drugs the night before or the morning of the incident.  ECF Dkt. #19, Ex. 12 at ¶¶60-61.  Therefore, Petitioner's claim that he was denied the opportunity to confront Mr. Waiters on this basis lacks merit.

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground Two in its entirety with prejudice.

### iii.      Ground Three - Jury Instructions

Next, Petitioner claims that the trial court's instructions on the elements of "flight," "knowingly," and "attempt were incomplete and failed to designate and define elements of the offenses charged in the indictment.  ECF Dkt. #1 at 5.

In Section V.B.i., above, the undersigned addressed the appellate court's decision in the context of Petitioner's ineffective assistance of trial counsel claims.  The undersigned reiterates that Petitioner has shown nothing unreasonable in the appellate court's decision.  The instructions provided stated the applicable law in an appropriate manner.  Accordingly, Petitioner has no basis for seeking habeas relief on this claim.  The undersigned recommends that the Court dismiss Ground Three in its entirety with prejudice.

### iv.      Ground Four - Cumulative Error

Petitioner contends that the culmination of the errors asserted in Grounds One, Two, and Three raise serious questions regarding the fairness of his trial.  ECF Dkt. #1 at 5-6.

Claims of cumulative error are not cognizable grounds for habeas relief. *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004). The Sixth Circuit has stated "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Id.* quoting *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). In fact, the *Lorraine* court held that a district court "overstepped its bounds on habeas review" by ruling that the cumulative weight of prosecutorial misconduct and ineffective counsel warranted habeas relief. *Lorraine*, 291 F.3d at 447. Accordingly, the undersigned recommends that the Court dismiss Ground Four of the instant petition with prejudice due to a lack of merit.

### v.   Ground Five - Verdict Against the Manifest Weight of the Evidence and not Supported by Sufficient Evidence

In Ground Five, Petitioner first contends that the jury's verdict was against the manifest weight of the evidence.

The undersigned recommends that the Court dismiss Ground Five in this respect because a claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D. Ohio Oct. 5, 2006). Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). Accordingly, Ground Five of the instant petition lacks merit and should be dismissed with prejudice insofar as it asserts that the conviction was against the manifest weight of the evidence .

Petitioner also briefly states that the conviction is not supported by sufficient evidence. ECF Dkt. #1 at 6. However, the entirety of his argument is aimed at weighing the testimony and arguing

that the jury lost its way, which as noted above is a consideration for a claim that a conviction is against the manifest weight of the evidence.  Therefore, it is questionable that the petition truly presents a claim that Petitioner's convictions were not supported by sufficient evidence.  Giving Petitioner the benefit of the doubt, the undersigned will address the merits of Petitioner's claim that his conviction is not supported by sufficient evidence.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358 (1970).  On habeas review, the District Court cannot weigh the credibility of the witnesses.  *Walker v. Engle*, 703 F.2d 959, 969.  Nor is the District Court permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact.  *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985), *and Walker,* 703 F.2d at 969.  In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319. "This requires successful challengers to meet a very high threshold, even with respect to newly-discovered evidence." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).  The inquiry is not whether the jury made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict.  *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.  *Scott,* 209 F.3d at 885 *quoting Jackson,* 443 U.S. at 319.

The state did introduce sufficient evidence to support Petitioner's conviction.  The appellate court outlined the pertinent law and the evidence that the state introduced to meet its burden of proof:

## FELONIOUS ASSAULT

{¶ 67} Mr. Taylor was convicted of violating Section 2903.11(A)(2) of the Ohio Revised Code:

(A) No person shall knowingly do either of the following:

....

(2) Cause or attempt to cause physical harm to another ... by means of a deadly weapon or dangerous ordnance.

Section 2923.11(K)(2) defines "dangerous ordinance [sic]" as "[a]ny explosive device or incendiary device." Incendiary device means "any device designed or specially adapted to cause physical harm to persons or property by means of fire, and consisting of an incendiary substance or agency and a means to ignite it." R.C. 2923.11(I).

{¶ 68} This Court has previously held that "a plastic container of gasoline, absent a means to ignite it, is not an 'incendiary device' within the meaning of R.C. 2923.11(I) and therefore not dangerous ordnance for the purposes of R.C. 2923.13(A) ." *State v. McCall*, 99 Ohio App.3d 409, 412 (1994). Ms. Smith testified, however, that, after Mr. Taylor poured gasoline on her, her porch, and inside her apartment, he intentionally stuffed part of his shirt inside the gas can, lit it, and attempted to throw it onto her porch. Accordingly, there was sufficient evidence for the jury to find that Mr. Taylor knowingly attempted to cause harm to Ms. Smith through the use of an incendiary device.

ATTEMPTED AGGRAVATED ARSON

{¶ 69} Mr. Taylor was also convicted of violating Sections 2909.02(A)(1) and (2) and Section 2923.02(A) of the Ohio Revised Code. Section 2909.02(A) provides:

(A) No person, by means of fire or explosion, shall knowingly do any of the following:

(1) Create a substantial risk of serious physical harm to any person other than the offender

(2) Cause physical harm to any occupied structure;....

Section 2923.02(A) provides:

(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

Ms. Smith and Mr. Waiters testified that Mr. Taylor intentionally poured gasoline on Ms. Smith's porch and person and attempted to set them on fire. Accordingly, there was sufficient evidence to support his attempted aggravated arson convictions.

ECF Dkt. #19, Ex. 12 at ¶¶ 65-69.  Petitioner has not shown that the appellate court's ruling constitutes an unreasonable application of federal law.  As the appellate court found, Ms. Smith's testimony and Mr. Waiters' testimony presented a sufficient basis upon which the jury could have found the elements necessary to convict Petitioner for the crimes charged.  Accordingly, the undersigned recommends that the Court dismiss Ground Five in its entirety with prejudice.

### vi.        Grounds Six and Seven - Validity of Sentence

In Ground Six, Petitioner contends that the sentence imposed was not authorized by law because the trial court incorrectly indicated that he would be put on post-release control for a period of five years.  ECF Dkt. #1 at 6.  However, Petitioner contends that he is actually subject to a mandatory term of three years of post-release control.  *Id*.  Petitioner concludes that his sentence is contrary to law and is void.  *Id*. at 6-7.

In Ground Seven, Petitioner contends that the trial court failed to impose a valid sentence within a reasonable time after conviction.  ECF Dkt. #1 at 7.  Petitioner reasons that he was sentenced on August 2, 2006, and the trial court has imposed "a nondiscretionary sanction required by a sentencing statute."  *Id*.

"It is undisputed that convicted defendants, ... have a due process right to a fair sentencing procedure."  *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) quoting *United States v. Anders*, 899 F.2d 570, 575 (6th Cir.1990).  This Court's review of Petitioner's sentence is limited to the constitutionality of Petitioner's sentence.  *Austin*, 213 F.3d at302.  "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.' "  *Id*. at 301 quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

The appellate court noted that Petitioner moved the trial court to vacate its August 9, 2006 judgment entry, but that judgment entry had been superseded by a subsequent judgment entry.  ECF Dkt. #19 , Ex 25 at ¶ 5; *see also* ECF Dkt. #19, Ex. 4, Ex. 9, Ex. 19 at 2.  Accordingly, the claim that Petitioner has preserved is meritless.  Even if Petitioner had preserved a claim related to the June 4,

2007 corrected judgment entry (ECF Dkt. #19, Ex. 9), the appellate court held that the entry could have been corrected.  ECF Dkt. #19, Ex. 25 at ¶7 citing *State v. Singleton*, 920 N.E.2d 958, syllabus (Ohio 2009) ("For criminal sentences imposed on and after July 11, 2006, in which a trial court failed to properly impose postrelease control, trial courts shall apply the procedures set forth in R.C. 2929.191.").  Accordingly, the appellate court determined that Petitioner's sentence is not void.

"This court . . . does not function as an additional state appellate court reviewing state-court decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988). Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir.1986)."  *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003).  Therefore, the Court should defer to the appellate court's interpretation of state law. Further, the undersigned recommends that the Court find that Petitioner has failed to demonstrate that the state court has violated any of his Federal Constitutional rights.

If the Court does not find Grounds Six and Seven to be procedurally defaulted, the undersigned recommends that the Court dismiss Grounds Six and Seven due to a lack of merit for the reasons discussed above.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE: March 14, 2011                               *s/ George J. Limbert*
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).